CONNECTICUT COMMISSION ON SPECIAL REVENUE ET AL.
*v.* CONNECTICUT FREEDOM OF INFORMATION
COMMISSION ET AL.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and SPEZIALE, Js.

Argued October 18, 1977—decision released February 28, 1978

*Carl R. Ajello,* attorney general, and *Richard M. Sheridan,* assistant attorney general, for the appellants (plaintiffs).

*Carl R. Ajello,* attorney general, and *F. D. Neusner,* assistant attorney general, for the appellants (named defendant et al.).

*Carter LaPrade,* with whom, on the brief, was *Harold B. Stevens III,* for the appellees (defendants New Haven Journal-Courier et al.).

*J. Warren Upson* filed a brief as amicus curiae.

HOUSE, C. J. This case came to this court on cross-appeals by the named parties from an order of the Court of Common Pleas directing that the attorney general withdraw as counsel for both of the commissions. The case started as an appeal to the Court of Common Pleas by the Connecticut commission on special revenue (hereinafter referred to as COSR) from a decision of the freedom of information commission (hereinafter referred to as FOIC) directing that COSR make available for inspection by the New Haven Journal-Courier and its staff reporter, Andrew Houlding, records in its possession of a hearing which COSR had conducted concerning the continued licensure of Connecticut Sport Enterprises, Inc., to operate a jai alai facility in Bridgeport and that it conduct all of its proceedings in conformity with Public Act No. 75-342, entitled "An Act Concerning Freedom of Information" (now General Statutes §§ 1-15, 1-18a, 1-19–1-19b, 1-21, 1-21a, 1-21c–1-21k). The appeal to the Court of Common Pleas by COSR was taken on its behalf by Carl R. Ajello, attorney general, by Richard M. Sheridan, assistant attorney general. In that appeal to the Court of Common Pleas, an

appearance was entered for FOIC by Carl R. Ajello, attorney general, by F. D. Neusner, assistant attorney general. It is pertinent to the proceedings to note that FOIC promptly moved that the New Haven Journal-Courier, Andrew Houlding, Connecticut Sport Enterprises, Inc., David Friend, and Joseph T. Gormley as chief state's attorney, be joined as additional appellees and that the motion was granted and those parties were joined in the Court of Common Pleas as additional appellees.[1]

The present appeal has nothing to do with the merits of the controversy between the two commissions but arises from the following circumstances: Shortly after they were made defendants in the appeal proceedings, Houlding and the Journal-Courier moved that the appearance of the attorney general as counsel for COSR be stricken and that he and his assistants be removed from any further participation in the case on behalf of COSR. The court went further than the motion requested and ordered that "the Attorney General . . . withdraw as counsel for both the Commission on Special Revenue and for the Commission on Freedom of Information." In its memorandum of decision, the court clearly indicated that it intended that its order also apply to the assistants to the attorney general and that the withdrawals of appearance should be made within thirty days after the substituted appearance for each commission of other counsel obtained from outside the office of the attorney general. It is from this order that both commissions took appeals to this court.

[1] Neither Connecticut Sport Enterprises, Inc., nor David Friend entered appearances. With the permission of the court, an appearance was entered for chief state's attorney Gormley as a plaintiff-appellant rather than as an appellee.

Further proceedings served to complicate the hearing of the cross-appeals in this court. While the appeals were pending, the General Assembly enacted Public Act No. 77-609, entitled "An Act Amending the Freedom of Information Statutes," effective July 1, 1977. This act amended the statutes concerning FOIC and provided in § 6 (d) (now General Statutes § 1-21i [d]) that on appeals from any decision of FOIC, "[n]otwithstanding the provisions of section 3-125, legal counsel employed or retained by said commission shall represent said commission in all such appeals and in any other litigation affecting said commission." On July 13, 1977, Attorney Mitchell W. Pearlman entered an appearance for FOIC "[i]n lieu of appearance of . . . Attorney General already on file." Parenthetically, we note that neither the record nor the file discloses any written objection by the attorney general to the "in lieu of" appearance by Attorney Pearlman.[2]

On July 15, the defendants Houlding and Journal-Courier (who in the first instance had moved that the attorney general be removed from participation in the case on behalf of COSR) filed

[2] "[Practice Book Sec. 867A. APPEARANCES]—ENTERING; NONSUIT AND DEFAULT . . . (b) Whenever an attorney files an appearance for a party . . . and there is already an appearance of an attorney . . . on file for that party, the attorney . . . filing the new appearance shall state whether such appearance is in place of or in addition to the appearance or appearances already on file. If the new appearance is stated to be in place of any appearance or appearances on file, the clerk shall, upon entry of the new appearance, give written notice thereof to any attorney . . . whose appearance is to be replaced by the new appearance. Unless a written objection is filed within ten days after the giving or mailing of such notice, the appearance or appearances to be replaced by the new appearance shall be deemed to have been withdrawn and the clerk shall make appropriate entries for such purpose on the file and docket."

a formal withdrawal of their objection to the attorney general's representation of COSR. On July 29, they filed an amendment to their withdrawal of objection to make it effective "provided that the Attorney General no longer represents the Freedom of Information Commission and its chairman."

On August 3, the attorney general, acting by assistant attorney general F. D. Neusner, filed with the clerk of the Court of Common Pleas another appearance form, entering his appearance for FOIC. This appearance noted that it was "[i]n addition to appearance already on file" which indication was followed by the notation: "This is filed to correct the computer error arising from appearance filed by Attorney Pearlman and is not a new appearance."

Thereafter, on September 29, 1977, FOIC and its chairman, acting by Attorney Pearlman, filed a written withdrawal of their appeal to this court stating as reasons for the withdrawal that by virtue of the amendment of § 1-21i (d) of the General Statutes by Public Act No. 77-609 (6) (d) "and resolution of the Commission, staff counsel now represents said Commission in appeals from its decisions" and "[t]he Attorney General no longer represents the Commission in this and other appeals from its decisions."

It is in this complicated situation that we are now called upon to consider not the merits of the decision of FOIC but the merits of the order of the Court of Common Pleas directing that the attorney general withdraw from any representation of either of the commissions. So far as we have been able to ascertain, this court has never heretofore been faced with

a similar problem concerning the unique status, powers and duties of the attorney general and his assistants and his dual position as a constitutional officer of the state and at the same time an attorney and member of the Connecticut bar and, as such, bound by the ethical standards which govern the legal profession. See Code of Professional Responsibility, Practice Book, p. 1. No similar question appears to have been raised in the only case we have found where this court considered a case where the plaintiff was represented by an assistant attorney general with the attorney general on the brief and the defendant was represented by another assistant attorney general. See *Dowe* v. *Egan,* 133 Conn. 112, 48 A.2d 735.

Nor in the circumstances of this case are we aided by any resolution of the conflict as to who, at this point, represents FOIC—the attorney general, as he insists, or Attorney Pearlman, who asserts that by resolution of the FOIC, under the authority of Public Act No. 77-609, he now represents that commission and the attorney general does not. This conflict having arisen since the appeals were taken, we have no factual basis on which to decide that question. Without resolution of that conflict, we are left in a quandary as to whether the appeal by FOIC is still before us as the attorney general, claiming to represent the FOIC, insists or has been withdrawn, as Attorney Pearlman, claiming that he and not the attorney general now represents the FOIC, asserts. Were it not that issues of substantial public importance are involved, issues of such sufficient significance that we expedited the scheduled hearing of the appeals pursuant to the provisions of § 762 of the Practice Book, we would, under usual procedure, remand the case to the trial court

for the finding of facts necessary to resolve this conflict. Under the circumstances, we have concluded that the public interest requires that to the extent possible on the record before us we discuss the basic issues raised on the appeals. We find further justification in the circumstance that although the order of the trial court was prompted by the subsequent, conditionally withdrawn, motion of the added defendants, that order remains outstanding and is directed against the attorney general acting for either of the commissions, and there is no question as to the continuing prosecution of the appeal by COSR.

The trial court filed a finding of facts in connection with the cross-appeals although it expressly found that no evidence was offered by either the moving or the responding parties. Both commissions filed assignments of error addressed to the finding. In the main, the assignments claim error in the conclusions reached by the court and in the overruling by the court of the claims of law made by the respective parties but they also claim that the court erred in finding certain facts without evidence. As to these latter claims, we disregard those where a correction would not affect the result. *Rushchak* v. *West Haven,* 167 Conn. 564, 566, 356 A.2d 104. Certain of them, however, have a material bearing on the issues on which the order was predicated and these we consider since "[f]indings of material fact not supported by the evidence or not based upon inferences reasonably drawn from the evidence must be stricken; Practice Book § 627; *Grodzicki* v. *Grodzicki* . . . [154 Conn. 456, 460, 226 A.2d 656]; and as the trial court's conclusions are tested by the finding; *Klein* v. *Chatfield,* 166 Conn. 76, 81, 347 A.2d 58; conclusions based on a

stricken finding cannot stand. *Grodzicki* v. *Grodzicki,* supra." *Morningside Assn.* v. *Morningside Development, Inc.,* 172 Conn. 60, 64, 372 A.2d 141.

The trial court made certain material findings of fact with respect to the attorney general and the operations of his office for which there appears to be no factual support and, obviously, no evidence since the trial court heard no evidence. It found that the attorney general not only appoints and assigns to their respective duties the assistant attorneys general, but, without qualification, that he supervises and directs them, that he "is not a neutral officer of the state," and, as a fact, that "[t]he common association of all Assistant Attorneys General with the Attorney General and their appointment, assignment, supervision and direction by him bind them into a single professional unit with the Attorney General to which the lawyers' code of professional responsibility applies jointly to all as to one."

The basis of the order of the trial court directing that the attorney general withdraw as counsel for both commissions was its conclusion that the attorney general and his assistants, as lawyers, "must perform their official duties in accordance with the lawyers' code of professional responsibility approved by the judges of the Superior Court," that a conflict of interest appears in the present case "in that the Attorney General has appeared for both the appellants and the appellees," that this representation "violates Canon 5 of the lawyers' code of professional responsibility"[3] and the "Disciplinary Rules 5-105 (A), (B) and (D) there-

---

[3] "Canon 5. A lawyer should exercise independent professional judgment on behalf of a client."

under,"[4] and that in such circumstances the duties of the attorney general, as prescribed by § 3-125 of the General Statutes,[5] "must give way to the lawyers' code of professional responsibility."

The inherent power of the judiciary to control admission to the bar, to discipline its members and to prescribe rules for their conduct as officers of the court is not open to doubt. *Spring* v. *Constantino,* 168 Conn. 563, 575 n.7, 362 A.2d 871; *Lublin*

---

[4] Disciplinary Rules 5-105 (A), (B) and (D) were amended effective October 1, 1976. As of the date of the order of the Court of Common Pleas, Disciplinary Rule 5-105 read as follows:

"DR 5-105 REFUSING TO ACCEPT OR CONTINUE EMPLOYMENT IF THE INTERESTS OF ANOTHER CLIENT MAY IMPAIR THE INDEPENDENT PROFESSIONAL JUDGMENT OF THE LAWYER.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105 (C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105 (C).

"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105 no partner or associate of his or his firm may accept or continue such employment."

[5] Section 3-125 is a lengthy statute prescribing the duties of the attorney general and his assistants. Relevant provisions include those that the attorney general shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction; shall appear for enumerated state officers and, inter alia, for all heads of departments and state boards, commissioners, agents, inspectors, committees and institutions in all suits and other civil proceedings, except upon criminal recognizances and bail bonds,

v. *Brown,* 168 Conn. 212, 228, 362 A.2d 769; *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652. "They are bound by canons of ethics which are enforced by the courts." *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 234, 140 A.2d 863.

Clearly, on the bare face of the record, the formal appearance of the attorney general for both commissions on the appeals to the Court of Common Pleas and to this court seems anomalous and contrary to the ethical considerations underlying Canon 5 which is obviously based on the biblical maxim that "no man can serve two masters." Matthew 6:24. We are, however, not limited to consideration of the superficial seemliness of the dual appearances. An examination of the particular circumstances of the case, the unique position which is held by the attorney general and his relationship to the contesting commissions has convinced us that the trial court was in error and that the attorney general has not been guilty of any professional impropriety.

The attorney general of the state is in a unique position. He is indeed sui generis. As a member of the bar, he is, of course, held to a high standard of professional ethical conduct. As a constitutional executive officer of the state; Conn. Const., Amend.

---

in which the state is a party, or is interested, or in which the official acts and doings of said officers are called into question, which suits "shall be conducted by him or under his direction"; shall perform all legal services required by such officers and boards relating to their official duties; bring or direct the bringing of all suits or other proceedings for such officers; advise or give his opinion to the head of any executive department or any state board or commission upon any question of law submitted to him, and procure such assistance as he may require.

I; he has also been entrusted with broad duties as its chief civil law officer and, as we noted in *Levitt* v. *Attorney-General,* 111 Conn. 634, 641, 151 A. 171, he must, to the best of his ability, fulfill his "public duty, as Attorney-General, and his duty as a lawyer to protect the interest of his client, the people of the State." This special status of the attorney general—where the people of the state are his clients—cannot be disregarded in considering the application of the provisions of the code of professional responsibility to the conduct of his office.

We find merit in the observations and the conclusions of the Illinois Supreme Court in its recent decision in *Environmental Protection Agency* v. *Pollution Control Board,* 69 Ill. 2d 394, 372 N.E.2d 50, a case which involved a problem similar to that now before us. That court observed (p. 401): "As discussed before, *Fergus* v. *Russel* (1915), 270 Ill. 304, and its progeny establish that the Attorney General's powers encompass advising and representing the State and all agencies in all legal proceedings. In addition, although an attorney-client relationship exists between a State agency and the Attorney General, it cannot be said that the role of the Attorney General apropos of a State agency is precisely akin to the traditional role of private counsel apropos of a client. (See *Secretary of Administration & Finance* v. *Attorney General* (1975), 367 Mass. 154, 326 N.E.2d 334, 336.) Indeed, where he or she is not an actual party, the Attorney General may represent opposing State agencies in a dispute. See *Progressive Party* v. *Flynn* (1948), 401 Ill. 573, 580; see also *City of York* v. *Pennsylvania Public Utility Com.* (1972), 449 Pa. 136, 295 A.2d 825, and *Arizona State Land Department* v. *McFate* (1960), 87 Ariz. 139, 348 P.2d 912; cf.

*People ex rel. Scott* v. *Illinois Racing Board* (1973), 54 Ill.2d 569. The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties. It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies. Only in this way will the Attorney General properly serve the State and the public interest. To allow the numerous State agencies the liberty to employ private counsel without the approval of the Attorney General would be to invite chaos into the area of legal representation of the State."

Clearly, the relationship between the attorney general and FOIC and COSR is quite different from that between private counsel and a client who retains him. The commissions have no corporate existence as such. They are merely agencies of the state and, by law, the attorney general is their legal adviser. The reasoning of the trial court would logically lead to the absurd conclusion that in the event of any dispute whatsoever between two state agencies, even though that dispute was not in litigation, the attorney general ethically could not act as legal adviser and lawyer for either agency because of the conflict indicated by their dispute.

We do not consider the trial court's analogy of the relationship of the assistant attorneys general to each other and to the attorney general vis-a-vis

associates in a private law firm.[6] The trial court's finding discloses that it heard no evidence as to the organization and operation of the office of the attorney general, and we find nothing in the record to support its findings on this matter and, hence, no support for the conclusions based thereon.

So far as the original moving parties, Houlding and the Journal-Courier, are concerned, we see no way in which their interests are prejudiced in the slightest degree by the participation of the office of the attorney general in the appeal. As parties to the appeal, these defendants are in no way hindered or prejudiced in the presentation of their claims in support of the decision of FOIC by such participation. The purpose of the litigation is to obtain a judicial determination as to whether a state agency, FOIC, has correctly interpreted and implemented the provisions of the Freedom of Information Act. We fail to see how the participation of the office of the attorney general in the proceedings necessary to make that determination is in any way prejudicial to the intervening defendants.

In concluding that the trial court erred in ordering that the attorney general withdraw as counsel for both commissions, we do not imply that such an order might not be proper in some other circumstances, that the trial court was without power to enter such an order or that the attorney general, as

---

[6] The committee on ethics and professional responsibility of the American Bar Association, in its formal opinion 342 (November 24, 1975), p. 10, observed the inaptness of such an analogy. Noting that "[n]ecessity dictates that government action not be hampered" by a strict construction of DR 5-105 (D), the committee stated: "The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice."

a member of the bar of the state, is not in his practice of law held to the high ethical standards delineated in the code of professional responsibility. We do conclude, however, that in examining his conduct as a member of the bar due consideration must also be given to his responsibilities and duties as the constitutional civil legal officer of the state and the organization and operation of his office. Giving full consideration to the sui generis nature of his constitutional office and its operation, we conclude that the trial court was not justified in entering the order which it did.

Our consideration of the problem presented by this case and the provisions of Canon 9 of the code of professional responsibility which states that "[a] lawyer should avoid even the appearance of professional impropriety" does prompt a suggestion which, admittedly, goes to form rather than to substance. As we have noted, the real client of the attorney general is the people of the state. *Levitt v. Attorney-General,* 111 Conn. 634, 641, 151 A. 171. Any suggestion of professional impropriety on the part of the attorney general would be considerably lessened in cases such as the present one involving civil litigation of a dispute between two state agencies if the appearance of the attorney general were entered for the state of Connecticut and appearances for the separate agencies entered by assistant attorneys general particularly assigned as counsel for the separate agencies.

There is error, the order that the attorney general withdraw as counsel for both commissions is set aside and the case is remanded to the Court of Common Pleas for further proceedings in accordance with law.

In this opinion the other judges concurred.