PUBLIC UTILITY COMMISSION OF
TEXAS, Relator,

v.

The Honorable Hume COFER,
Judge, Respondent.

No. C–6811.

Supreme Court of Texas.

May 11, 1988.

Rehearing Denied June 15, 1988.

Scott McCollough, Office of the Atty. Gen., Larry F. York, Baker & Botts, R.S. Davis, II, Myra McDaniel, Bickerstaff, Heath & Smiley, Don Butler, Butler & Casstevens, Douglass D. Hearne, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for respondent.

Fernando Rodriguez, Chief, Energy Div., Steven Baron, Office of the Atty. Gen., Jim Mattox, Atty. Gen., Karen Pettigrew, Office of the Atty. Gen., Austin, for relator.

WALLACE, Justice.

This original proceeding is brought in the name of the Public Utilities Commission [PUC], against the Honorable Hume Cofer of the 98th District Court in Travis County. The underlying action that is now pending in that court involves an appeal from a decision of the PUC in a major telephone rate case. The issue before us is whether Judge Cofer clearly abused his discretion in holding that the Attorney General could not represent both the PUC and a state agency that is appealing its decision. In response to a motion filed by outside counsel hired by the PUC, Judge Cofer held that the Attorney General's representation of opposing agencies created a conflict of interest that could be resolved only if he agreed to elect between representing the PUC or the agency that was appealing its decision. The PUC itself does not challenge that ruling and in fact, through its independent counsel, urges that it be upheld. However, the office of the Attorney General, claiming a statutory right to represent the commission, has filed a petition for writ of mandamus in the name of and over the objections of the PUC, requesting that we order Judge Cofer to allow the Attorney General's office to represent both sides in the appeal. To make matters even more complicated, the office of the Attorney General—purporting to oppose itself—has, in the name of the PUC, filed a reply to the petition requesting us to hold that the Attorney General must represent the commission alone and not the state agency that is appealing its decision. The confusing alignment of the parties and their legal counsel gives rise to the very questions we are called upon to answer: (1) who is the proper legal representative of the PUC; and (2) if the Attorney General is the legal representative of the commission, is he also the proper representative of the agency that is challenging its decision?

The answer to the first question is written in black-letter law: "[t]he Attorney General of the State of Texas shall represent the commission in all matters before the state courts, and in any court of the United States, and before any federal public utility regulatory commission." Public Utility Regulatory Act [PURA], TEX.REV. CIV.STAT.ANN. art. 1446c § 15 (Vernon Supp.1987). In light of the clear, unambiguous and mandatory language of the statute, there can be no legitimate controversy as to the identity of the commission's lawful representative. The Legislature has plainly decreed that the Attorney General *shall* represent the commission.

The answer to the second question seems equally clear. The case now pending before the district court is an appeal by the State Purchasing and General Services Commission [SPGSC] from a decision by the PUC. The SPGSC had previously intervened in the proceedings before the PUC, pursuant to the State Purchasing and General Services Act, TEX.REV.CIV.STAT. ANN. art. 601b § 10.11 (Vernon Supp. 1987):

> If the [State Purchasing and General Services] commission determines that there is sufficient economic impact on state government, the commission may intervene on behalf of state agencies in telecommunications rate cases and may hire special counsel and expert witnesses to prepare and present testimony. *The attorney general shall represent the commission before the courts in all appeals from rate cases in which the commission intervenes.* (Emphasis added).

Thus, once again we confront a statute that on its face clearly and unambiguously iden-

tifies the Attorney General as the appropriate legal representative.

In light of these statutes, is the Attorney General to represent these agencies even when they occupy opposing positions in litigation? Judge Cofer apparently concluded that he could not. Despite the language in PURA and SPGSCA which seems to dictate that the Attorney General should represent both sides in this appeal, Judge Cofer determined that the Attorney General would have to allow one or both of the agencies to procure other legal counsel. Judge Cofer concluded that the Attorney General's "dual representation" of opposing interests created an irreconcilable conflict of interest, and was not consistent with fundamental principles of the adversary system. Relying on our decision in *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979), Judge Cofer determined that he had the "inherent power" to preserve the independence and integrity of his court and should exercise that power by compelling the Attorney General to either make an election between the two agencies or permit the agencies to obtain independent counsel.

The Attorney General assails Judge Cofer's decision on two grounds. First, he contends that PURA and SPGSCA mandate that he should represent both agencies, even when they oppose each other. Secondly, he argues that even if Judge Cofer did have the power to protect the adversarial nature of the proceeding through eliminating a conflict of interest, the Attorney General's "dual representation" of opposing agencies does not create a conflict of interest. Therefore, the argument goes, there was no *quid pro quo* for the exercise of the trial court's "inherent powers." In support of the argument, the Attorney General relies upon a number of decisions from other jurisdictions, which appear to establish a majority rule that such "dual representation" does not constitute an impermissible conflict of interest. *State v. Mississippi Public Service Commission*, 418 So.2d 779 (Miss.1982) *and cases cited therein; Connecticut Commission on Special Revenue v. Connecticut Freedom of Information Commission*, 174 Conn.

308, 387 A.2d 533 (1978); *Contra, City of York v. Pennsylvania Public Utility Commission*, 444 Pa. 136, 295 A.2d 825 (1972).

In defense of Judge Cofer's order, both the outside counsel and the assistant attorneys general who claim to represent the PUC raise several arguments. First, it is contended that by "withdrawing" from the case, Attorney General Mattox effectively mooted any controversy over his right to represent the agencies, since the various assistant attorneys general have no constitutional or statutory authority that is not derived directly from the Attorney General himself. Secondly, it is contended that as a matter of statutory construction, the Attorney General is *not* the designated representative of both the PUC and the SPGSC when those agencies are on opposing sides of litigation. Finally, it is argued that if the statutes do in fact dictate that the Attorney General should represent both of these agencies, then those statutes not only intrude upon the "inherent powers" of the judiciary to protect the adversary system, but also violate the principle of separation of powers.

■■■ We find no merit in the contention that the "withdrawal" of the Attorney General forecloses consideration of the merits of this dispute. After the conflict of interest issue was raised in the district court, the Attorney General wrote a letter to the commission explaining that:

I have removed myself from this case entirely and I am instructing all the attorneys not to consult with me concerning any matter involved with respect to this case. Each side should act independently as counsel for their respective interests.

We do not view this letter as an abdication by the Attorney General of his statutory duty to represent the state agencies, assuming that duty existed in this case. Rather, this letter was intended as an assurance by Attorney General Mattox that he would not *personally* be involved in the representation of either agency. The argument that this "withdrawal" effectively removes both the Attorney General and his

assistants from the case is faulty in two respects. First, while all of the constitutional and statutory authority is vested in *one* Attorney General, he need not be personally involved in every case and may properly delegate his duties to his assistants. TEX.GOV'T CODE § 402.001 (Vernon 1988). Even though he may choose for some reason to remove himself from a case, the Attorney General is still of counsel in every case where an assistant is of counsel. *See e.g., Langdeau v. Dick,* 356 S.W.2d 945, 959 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). Secondly, if the letter were construed as an abandonment of the right and duty to represent the agencies, then there would be a serious question regarding its validity. If the Legislature has designated the Attorney General as the representative of the state agencies, then the Attorney General would be without authority to do otherwise. In order to accept this letter as a valid "withdrawal" and refuse to disturb Judge Cofer's order on that basis, we would have to assume a negative answer to the very issue we would otherwise have to decide.

We turn now to the question of whether PURA and SPGSCA can be construed to mean that the Attorney General, while ordinarily entitled to represent both the PUC and the SPGSC, is not to do so when the agencies occupy opposite sides of the docket. We hold that the statutes are not open to that construction, and in effect mandate that the Attorney General should represent both agencies in all appeals regardless of the posture of the case. We base this decision upon the plain language of the statutes. The Attorney General is to represent the Public Utilities Commission in *all* matters before the state courts. *PURA,* § 15 (emphasis added). Similarly, the Legislature has determined that the Attorney General is to represent the State Purchasing and General Services Commission in *all* appeals from telephone rate decisions by the PUC. *SPGSCA,* § 10.11 (emphasis added). We are not free to rewrite the statutes to reach a result we might consider more desirable, in the name of statutory construction. *Cf., Goldman v. Torres,* 341 S.W.2d 154, 158 (Tex.1960);

*A.M. Servicing Corp. v. State,* 380 S.W.2d 747, 748 (Tex.Civ.App.—Dallas 1964, no writ). A court may not write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute. *Jefferson County Drainage District No. 6 v. Gary,* 362 S.W.2d 305, 307-8 (Tex.1962).

We now confront the ultimate and dispositive issue in this case. Did the trial court's "inherent powers" or the constitutional principle of separation of powers provide Judge Cofer with the discretion to order that the Attorney General could not represent both agencies, in spite of the statutes that dictate otherwise?

We recognize that a court has inherent powers it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in preservation of its independence and integrity. *Eichelberger,* 582 S.W.2d at 398. We can say without hesitation that in our adversary system, a court has not only the power but the *duty* to insure that judicial proceedings remain truly adversary in nature. On the other hand, it is equally true that when the Legislature has spoken on a subject, its determination is binding upon the courts unless the Legislature has exceeded its constitutional authority. *Castillo v. Canales,* 174 S.W.2d 251, 253 (Tex.1943). The courts are not free to thwart the plain intention of the Legislature expressed in a law that is constitutional. *National Surety Corp. v. Ladd,* 131 Tex. 295, 301, 115 S.W.2d 600, 603 (1938). While we have held that courts have certain "inherent powers" and today affirm that this power includes the authority to insure an adversary proceeding, we are cited no cases which have held that these "inherent powers" furnish a basis for either ignoring, refusing to enforce or striking down otherwise valid statutes. The notion that these "inherent powers" authorize such measures raises separation of powers issues of its own; but we need not explore them here. Although we recognize that Judge Cofer had the power to take appropriate action to protect the adversary nature of the proceeding, we find that the action he took was not appropriate.

Judge Cofer deprived the Attorney General of his role in representing these agencies because of concerns that the Attorney General might, in the guise of "representation," usurp the authority of the agencies. Judge Cofer was concerned that the Attorney General could utilize his position as representative of both parties to effectively control the outcome of the case, achieve whatever result he thought proper, and thereby subvert the administrative process that culminated in the agency decision he was charged with defending. If the Attorney General successfuly pursued such a course of action, then in essence he, a member of the Executive Branch, would be exercising the legislative power of rate-making which has been delegated to the PUC. These concerns are not only the motivating factors behind Judge Cofer's ruling, but also form the basis for the argument that the Attorney General's dual representation of opposing agencies is a violation of the principle of separation of powers.

The problem with the solution imposed by Judge Cofer is that it deprives the Attorney General of a power he clearly possesses in order to prevent him from exercising powers he obviously does not possess. While the Attorney General has the right and duty to *represent* the state agencies, he has no constitutional or statutory authority to exercise powers that belong to the Legislature or that have been delegated by the Legislature to administrative agencies. Any attempt to exercise such powers or defeat the exercise of those powers by the appropriate bodies by collusive "representation" would not only violate the principle of separation of powers, but call into question the integrity of a court that authorized or permitted such action. However, there is nothing in the record to support a conclusion that the Attorney General or any of his assistants were attempting to "fix" the outcome of the appeal or failing to diligently represent the agencies. Dual representation by the Attorney General of opposing agencies, does not, standing alone, violate the principle of separation of powers or constitute such a threat to the integrity of the court as to authorize the action that Judge Cofer took.

There are many alternative ways of insuring an adversary proceeding in cases where the Attorney General is representing opposing agencies. First, a statute authorizing the Attorney General to represent a state agency does not close either the mouth of the agency or the ears of the courts, when there are complaints that the Attorney General or his assistants are not in fact fulfilling their duty to *represent* the agency. We emphasize that when a statute confers a right upon the Attorney General to represent an agency, it imposes a corollary duty, and the agency has every right to expect the same diligent and faithful representation as any other "client." Secondly, the court may take appropriate action to ensure that the state attorneys who represent the opposing agencies are effectively "screened off" from each other, to the extent that the Attorney General has not already promulgated procedures to assure this. Thirdly, the court should carefully scrutinize all actions taken by the state attorneys who represent the opposing agencies, particularly in matters of compromise and settlement. The court should in all cases ascertain whether the proposed settlement of the dispute between the agencies has met with their approval. Finally, in the unlikely event that any state attorney should fail to adequately represent the interest of his client agency, the court may deal with such failure in the same manner in which it may address such problems with other lawyers who practice before it.

The various safeguards we have mentioned are not intended to exhaust the possibilities. Rather, they are noted merely to illustrate that there are other measures through which the concerns that motivated Judge Cofer's decision may be allayed. As for the measure Judge Cofer chose to employ, we hold that he had no authority to remove the Attorney General from his statutory role as representative of both the PUC and the SPGSC.

Because we base our decision solely upon the language of PURA and SPGSCA, we

do not address the Attorney General's contentions that his "dual representations" of opposing agencies does not create a conflict of interest. While our decision is consistent in *result* with the decisions of other state courts that have permitted "dual representation," we express neither approval nor disapproval of these authorities. If "dual representation" does in fact create a conflict of interest, it is a problem of the Legislature's creation, and one that the Legislature must resolve.

In light of our opinion today, we are confident that Judge Cofer will vacate his order. The writ of mandamus will issue only if he fails to do so.

CULVER, J., files a dissenting opinion in which SPEARS, J., joins.

CULVER, Justice, dissenting.

I respectfully dissent.

The two statutes which authorize the Attorney General to represent the Public Utilities Commission (PUC) and the State Purchasing and General Services Commission (SPGSC), when strictly applied to the facts of this case, bring about an ostensible violation of the principle of separation of powers contained within our State Constitution. Judge Cofer sought to prevent these glaring improprieties by exercising his inherent power to ensure that the judicial proceedings in his court remained adversary in nature. The majority, while recognizing that a court has inherent power to take such action, determined that the action Judge Cofer took in this cause was "not appropriate." This determination leads to a result this writer can neither condone nor accept.

The many inherent powers of our courts were expressly recognized in *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979). In that case, the court explained that inherent judicial powers spring from the doctrine of separation of powers between the three governmental branches. *Id.* at 399; Tex. Const. Art. II, Sec. 1. Specifically, the inherent judicial powers of our courts include the power to regulate admission to the bar and practice of law, the power to disbar, and the power to determine what constitutes practice of law. *Id.* at 398 n. 1. This court has exercised its inherent judicial power by establishing a Code of Professional Responsibility. Supreme Court of Texas, Rules Governing the State Bar of Texas art. X, Sec. 9 (Code of Professional Responsibility) (1987). It is not necessary to cite the specific provisions of the Code of Professional Responsibility which prohibit attorneys from representing opposing parties in litigation. I mention the Code only as an example of the broad power our constitution bestows upon judges to maintain fairness and integrity in their courts. Any legislative enactments, such as the ones involved here, are unconstitutional to the extent they encroach upon the inherent powers enumerated above. The legislature is constitutionally prohibited from exercising any power properly attached to the judicial branch. Tex. Const. Art. II, Sec. 1.

The majority reasons that representation by the Attorney General of opposing agencies, does not, standing alone, violate the principle of separation of powers or constitute such a threat to the integrity of the court as to authorize the action that Judge Cofer took. It is suggested that the Legislature has only given the Attorney General the right and duty to *represent* the agencies, but he has no authority to exercise powers that have been delegated by the Legislature to the agencies. The majority concedes that any attempt on the part of the Attorney General to exercise such powers by collusive representation would violate the principle of separation of powers. The majority concludes that no such violation has been shown in this cause, as there is no evidence in the record of any attempt by the Attorney General to "fix" the outcome of the case. With all due respect to my brethren, I cannot participate in this credulity. So long as the Attorney General is allowed to represent both sides, the record will *never* contain any evidence of collusion because neither agency will be represented by an advocate who is willing to reveal the collusion. Under the majority view, if the trial judge or the agencies suspected misconduct on the part of the Attorney General, they would be powerless

to remove him from the case because their hands would be tied by the statutes. If the trial judge declared a mistrial, the entire parody would begin anew. The solution proposed by the majority is simply unworkable.

In conclusion, I do not dispute the authority of the Legislature to appoint the Attorney General as the legal representative of state agencies in cases before our courts. However, to the extent these statutes prohibit our courts from exercising their inherent powers, they violate the principle of separation of powers set out in our State Constitution. I would deny leave and allow Judge Cofer's order to stand. Under these circumstances, one of the agencies should be allowed to seek independent representation.

SPEARS, J., joins in this dissenting opinion.