[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO INTERVENE
On September 8, 1993, the Golden Hill Paugussett Tribe of Indians ("plaintiff") filed a one count complaint against the town of Seymour. The town has been sued not only in its corporate capacity but also in its capacity as representative of a class of over 450 parties who are alleged to have an interest in or claim title to certain lands within the town. The complaint was CT Page 2076 subsequently amended on November 4, 1993.
In the amended complaint, plaintiff alleges that it is an indian tribe formally recognized under General Statutes 47-59a
and 47-63. Plaintiff claims that since "time immemorial," and until the acts alleged in the complaint, it exclusively owned, used and occupied certain lands located in Seymour. Plaintiff claims that a deed dated March 2, 1731, purported to transfer such lands from the plaintiff.
Plaintiff claims that the Colony of Connecticut promulgated laws which prohibited the alienation of indian lands without the allowance or approval of the Assembly. Plaintiff alleges that the deed violated these colonial laws regarding indian land transfers. Plaintiff claims further that its title and right of possession to the lands in question were never lawfully extinguished. According to plaintiff, neither the Colony nor the State of Connecticut has ever allowed or approved the alienation of the tracts of land within the town. Therefore, plaintiff alleges that any purported conveyances of such lands are void. Plaintiff concludes that since the subject tracts have never been legally transferred, plaintiff retains the title and right of possession to the tracts. Based on the allegations contained in the complaint, plaintiff asks the court to declare that plaintiff has the right of possession to the tracts at issue, to restore plaintiff to such possession, to award rents and profits from the properties, and to award attorney fees, costs and any further relief deemed appropriate.
On October 20, 1993, the Attorney General of the State of Connecticut filed a motion to intervene in the action on behalf of the State pursuant to Public Act No. 93-389, 3, and Practice Book 99 and 100. In the motion, the State claims that the present action has raised serious issues regarding the stability and marketability of land titles in the state. The State has filed an accompanying memorandum of law in support of the motion. Plaintiff filed an objection to the motion to intervene and an opposing memorandum on November 29, 1993. The State filed a reply memorandum in support of the motion on November 26, 1993. It is also noted that the town filed memorandum in support of the motion to intervene on November 5, 1993.
In its memorandum of law, plaintiff first argues that the case at bar is the functional equivalent of a quiet title action regardless of the fact that the action derives from reliance on the State's indian laws. Plaintiff claims that according to statute, CT Page 2077 only those claiming title to or an interest in the land at issue may be parties to a quiet title action. Therefore, plaintiff contends that the State has no recognized legal interest.
Plaintiff next claims that a trust and fiduciary relationship has developed over three centuries of contact between plaintiff and the State. Plaintiff asserts that colonial and state laws regarding indian lands, members and funds have elevated the state to a position of "overseer" or "guardian" of plaintiff. Plaintiff argues that the State's attempt to intervene as a defendant in the present case would violate this trust relationship. In fact, plaintiff maintains that if the State is to intervene at all, it should do so on plaintiff's behalf. Plaintiff concludes that the motion to intervene should be denied due to an irreconcilable conflict between the State's duty to the general populace and its trust relationship with plaintiff.
Plaintiff also claims that the act violates various provisions of both the State and Federal Constitutions. However, because the present motion will be decided on other grounds, the constitutionality of the act will not be considered.
In the State's memorandum, it maintains that plaintiff's quiet title analogy is misplaced. The State claims that plaintiff's characterization of this suit as the "equivalent" of a quiet title action is an admission that it is not, in fact, such an action. The State argues that the scope of the relief sought, which includes a demand for possession and damages in the form of lost rents and profits, also demonstrates that the present action is not one for quieting of title.
Further, the State denies the existence of an irreconcilable conflict of interest. The State claims that the responsibilities of the State toward plaintiff are those imposed by statute. The State contends that such statutory duties are limited to the care and management of reservation lands; the care and control of tribal funds; and the retaining of reservation lands held in trust by the State. The State concludes that no all-encompassing trust relationship can be gleaned from these special duties and, since the present case does not implicate any recognized duty, there is no conflict of interest.
The State also refers to Practice Book 99 and 100 as authority supporting its motion to intervene. In its memorandum, the State claims that it has a significant and substantial interest CT Page 2078 in the stability and marketability of land titles. The State alleges that the present case seriously threatens such interest. The State concludes that it has a unique interest and such interest is not coterminous with the interests of the defendants presently in the action. Intervention will not cause delay or prejudice, and its presence will bring a state-wide perspective to the controversy.
"[A] court will not pass upon a constitutional question if there is present some other ground upon which the case may be decided." Hartford v. Powers, 183 Conn. 76, 84-85, 438 A.2d 824
(1981), citing Ashwander v. Tennessee Valley Authority, 297 U.S. 288,347, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring), reh'g denied, 297 U.S. 728, 56 S.Ct. 588, 80 L.Ed. 1011 (1936). Since the issue before the court can be decided on the basis of permissive intervention, the constitutionality of the act will not, and, in fact, cannot be reached.
"`The consideration of permissive intervention involves numerous factors including the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of the representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. . . .'" Milford v. Local 1566, 200 Conn. 91, 94, 510 A.2d 177
(1986), quoting Horton v. Meskill, 187 Conn. 187, 197, 445 A.2d 579
(1982).
As noted above, plaintiff claims that the case at bar is the "equivalent" of a quiet title action. Plaintiff argues that the State has no legally recognized interest in the lands at issue and, therefore, the State is not a proper party in a quiet title action. This argument raises the issue of whether the State has a sufficient interest so as to warrant intervention.
The plaintiff's attempt to classify the present case as a quiet title action is unavailing. The reasons for this conclusion go beyond the sheer number of individual tracts involved in the litigation. The claim being asserted by plaintiff is unique. As such, any attempt to label this claim with an historic property law label, and view it strictly in accordance with such label, would serve no purpose. See Oneida Indian Nation of New York v. Oneida,434 F. Sup. 527 (1977), aff'd, 719 F.2d 525 (2d Cir. 1983), aff'd in relevant part, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169, CT Page 2079 reh'g denied, 471 U.S. 1062, 105 S.Ct. 2173, 85 L.Ed.2d 491
(1985).
If this unique indian land claim can be pigeon-holed into an ordinary cause of action at all, it is more akin to an action for ejectment than one for quiet title. "[A quiet title action] is not a proper remedy for the alleged owner of the legal title to land to obtain an adjudication of his title against one by whom he has been ousted of possession." (Citation omitted.) Cahill v. Cahill,76 Conn. 542, 546, 57 A. 284 (1904). "One reason for the rule is, that if the defendant is in possession the plaintiff has adequate remedy by the ordinary actions at law of ejectment and trespass." Id., 547. "Section 4053 [now 47-31] authorizes this special statutory remedy when legal injury results to the owner in possession of the land from unlawful claims of an adverse estate or interest in that land; the statutory relief authorized is equitable, and consists in a judgment quieting title and settling the title to the land in dispute. . . ." (Citation omitted.) Spencer v. Merwin, 80 Conn. 330, 334, 68 A. 370 (1907). In actions to quiet title, the court is not authorized "to try the common-law action of ejectment, and to render judgment, appropriate to that action, for possession and money damages." Foote v. Brown,78 Conn. 369, 379, 62 A. 667 (1905).
An action of ejectment is a legal remedy "in which the right of possession to [property] may be tried and the possession obtained." 25 Am.Jur.2d Ejectment 1 (1966). An action of ejectment is frequently used as a "means of trying title, since in order to succeed, the plaintiff must have the possessory title — the right of entry upon the land." Id. Further, modern practice allows for a plaintiff to recover mesne profits and damages in ejectment actions. Id., 148, 150. Such recovery is usually measured by the fair rental value of the property. Id., 151.
In its prayer for relief, plaintiff asks the court, inter alia, to find that plaintiff has a right of possession to the lands in question, to restore plaintiff to such possession, and to award plaintiff the rents and profits from the lands. Based on the allegations contained in plaintiff's amended complaint and its prayer for relief, plaintiff's cause of action is more akin to an ejectment action than one to quiet title. In any case, the fact that neither the parties nor the court can find a sufficient historic analogue to the present cause of action is further proof of its uniqueness. CT Page 2080
Even assuming arguendo that the case at bar is a quiet title action, the State's interest in the present litigation is substantial enough so as to warrant intervention. General Statutes47-31 provides in pertinent part that "[a]n action may be brought by any person claiming title to, or any interest in, real or personal property . . . against any person who may claim to own the property, or any part of it, . . .or to have any interest in the property. . . ." While the State may not claim title, the State has a significant interest in the tracts at issue. The State has a substantial interest in the marketability and stability of land titles within the state. Connecticut courts have recognized that "a state has `strong interests in assuring the marketability of property within its borders.'" Hoge v. Hoge, 178 Conn. 308, 322,422 A.2d 280 (1979), quoting Shaffer v. Heitner, 433 U.S. 186,97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). This interest, even if it were not judicially recognized, was the impetus behind passage of the act. Whether the act is constitutional or not, an issue reserved for another day, does not alter the fact that the legislature has made clear that there is a substantial interest in maintaining the stability and marketability of land titles within the state. It is beyond doubt that plaintiff's claims are of such a nature as to implicate the State's interest. Therefore, the state has a particular interest in the tracts at issue in the case at bar.
Plaintiff relies on Swenson v. Dittiner, 183 Conn. 289,439 A.2d 334 (1981), for the proposition that the plaintiff has the right to decide which parties will be joined in a quiet title action in the first instance. However, plaintiff's decision does not preclude the court from bringing in other parties when the court deems that the interests of justice so require. See Practice Book 99, 100. "In quiet title actions, as in other actions, any person may be permitted to intervene where he has or claims an interest in the controversy. . . ." 65 Am.Jur.2d Quieting Title 71 (1966).
Based on the foregoing, plaintiff's attempt to characterize its claim as an action to quiet title is unavailing. Such attempt does not act to refute the existence of the State's substantial interest in the present case.
Plaintiff next claims that the State cannot intervene in the present action because to do so would violate the trust and fiduciary relationship between plaintiff and the State. Plaintiff argues that an impermissible conflict of interest would result if CT Page 2081 the State was allowed to intervene as a party defendant.
"Absent some showing of . . . control or supervision over tribal monies or properties, . . .or the existence of a fiduciary duty based on an authorizing document such as a statute or a regulation, . . .there can be no trust relationship between [plaintiff and the State]." (Citations omitted.) U.S. v. Wilson, 881 F.2d 596,600 (9th Cir. 1989). Connecticut General Statutes 47-61
provides:
 In any action brought by an Indian or Indians for the recovery of lands owned by Indians, or sequestered for their use by the general assembly or by any town agreeably to law, the defendant shall not plead the statute of limitations, except as against an Indian or Indians authorized by law to convey Indian lands, or as against a town authorized by law to convey Indian lands.
At least one court, while referring to 47-61 in denying leave to file the special defenses of laches, the statute of limitations, adverse possession and the like, has noted that "[i]nsofar as Connecticut . . . asserts an interest in the title of such indian lands, it too has stood in a position of trust and guardianship with respect to the resident indian tribes." Schaghticoke Tribe of Indians v. Kent School Corp., 423 F. Sup. 780, 786 (D. Conn. 1976).
This court need not intimate whether General Statutes 47-61
is sufficient proof of the existence of a fiduciary duty. Even if such a duty exists, intervention by the State as a party defendant will not result in an impermissible conflict of interest.
 When this country promulgated its Declaration of Independence, the writers of that instrument in discussing the inalienable rights of man stated: `that to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed. . . .' Thus, the source of authority of the Attorney General is the people who establish the government, and his primary obligation is to the people. CT Page 2082
Hancock v. Terry Elkhorn Mining Co., 503 S.W.2d 710, 715 (Ky. 1974) (The Attorney General of Kentucky had a right to intervene where issues of public concern were involved.)
General Statutes 3-125 describes the duties of Attorney General. One such duty is that he "shall have general supervision over all legal matters in which the state is an interested party. . . ." Id. He shall appear for the state in such instances. Id. "[the Attorney General] must, to the best of his ability, fulfill his `public duty, as Attorney-General, and his duty as a lawyer to protect the interest of his client, the people of the state.' This special status of the attorney general — where the people of the state are his clients — cannot, be disregarded in considering the application of the provisions of the code of professional responsibility to the conduct of his office." (Citation omitted.) Connecticut Comm'n. on Special Revenue v. Connecticut Freedom of Information Comm'n., 174 Conn. 308, 319,387 A.2d 533 (1978).
The plaintiff equates "trust relationship" with "blind allegiance." However, tribal interests may not always correspond with state interests. Even the federal government does not have a duty of undivided loyalty to its indian wards.
 It may be that where only a relationship between the Government and the tribe is involved, the law respecting obligations between a trustee and a beneficiary in private litigation will in many, if not all, respects adequately describe the duty of the United States. But where Congress has imposed upon the United States, in addition to its duty to represent Indian tribes, [another] duty. . . , the analogy of a faithless private fiduciary cannot be controlling for purposes of evaluating the authority of the United States to represent different interests.
Nevada v. United States, 463 U.S. 110, 142, 103 S.Ct. 2906, 2924,77 L.Ed.2d 509 (1983).
The U.S. District Court of Minnesota was recently faced with a case wherein the defendants requested the court to require the United States to intervene on their behalf or to represent the interests of both sides of the litigation, rather than grant the CT Page 2083 United States' motion to intervene as a plaintiff on the side of a particular band of Chippewa Indians. Mille Lacs Band of Chippewa Indians v. Minnesota, ___ F. Sup. ___ (D. Minn. 1993). The court stated that
 [a]lthough the United States may have interests to protect in this case in addition to its trustee interest in indian tribes, it may choose to enforce its trustee interest instead of other interests. If Congress has given the executive branch conflicting obligations, the government may have to choose which is more important.
(Internal citation omitted.) Id., ___.
Attorney General will occasionally be in a position where his duties conflict. Because of his "special status", the Attorney General is not subject to the rules of professional conduct to the same extent as is a private attorney. See Connecticut Comm'n. on Special Revenue, supra. Even assuming that the State has a trust relationship with the plaintiff, such a relationship does not require "blind allegiance". The State's trust relationship with its citizenry cannot be overlooked. When the State finds itself in a position where its duties collide, it may be forced to choose which interest is more important. See Mille Lacs Band of Chippewa Indians, supra.
The State's duty to the general public, and the statutory duty of the Attorney General to represent such interest, conflicts with the duties of the State under the alleged trust and fiduciary relationship with plaintiff. Therefore, under the facts of the present case, the State has the' power to choose whether to intervene as a party defendant rather than as a party plaintiff. This choice does not result in an impermissible conflict of interest.
In applying the factors to be considered for permissive intervention to the present case, the State's motion to intervene should be granted. The requested intervention is timely; the action was commenced on September 8, 1993. Further, as discussed previously, the State has a significant interest in the controversy. The State's presence will ensure that such interest is fully represented so as to allow the court to make a complete resolution of the controversy. Based on the foregoing, the State's CT Page 2084 motion to intervene is hereby granted.
By The Court ___________________ Curran, J.