[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO INTERVENE
The Golden Hill Paugussett Tribe of Indians (hereinafter referred to as "the plaintiff") commenced this action against People's Bank ("hereinafter referred to as "the defendant") by virtue of a one count complaint returnable to this court on September 14, 1993.
The plaintiff alleges in its complaint that under Connecticut General Statutes 47-59a and 47-63 they are a formally recognized Indian tribe. The plaintiff claims that since "time immemorial," until the acts alleged in the complaint, it exclusively owned, used and occupied certain land located in Bridgeport. Plaintiff further claims that a series transactions, alleged to have occurred some three centuries ago, purported to convey title to this land from the plaintiff CT Page 3045 to certain colonists. The plaintiff next alleges that the Colony of Connecticut promulgated laws which prohibited the alienation of Indian lands without the "consent, the allowance or approbation" of the Assembly. The plaintiff continues in its allegations that its title and right of possession to the land in question were never lawfully extinguished as neither the Colony nor the State of Connecticut ever consented, allowed or approbated the alienation of the subject land. Therefore the plaintiff alleges that any purported conveyances of such land are void. Plaintiff claims that the defendant is currently in possession of or claims title to or claims an interest in such land. The plaintiff concludes that since there has never been a legal transfer it retains the title and right of possession to the land. Based on the allegations contained in the complaint, plaintiff asks the court to declare that the plaintiff has the right of possession and title to the lands at issue and to quiet title in the plaintiff pursuant to Connecticut General Statute47-31. The plaintiff further requests that it be restored to possession, that it be awarded rents and profits from the property, and that it be awarded attorney fees, costs and any further relief deemed just.
On October 20, 1993, the Attorney General of the State of Connecticut (hereinafter referred to as "AG") filed a motion to intervene in the action on behalf of the State of Connecticut [Connecticut] pursuant to Public Act No. 93-389, 3 (hereinafter referred to as "Public Act"), and Practice Book 99 and 100. In the motion, accompanied by a supporting memorandum of law the State claims that the present action has raised significant and substantial issues regarding the stability and marketability of land titles in the state. On November 23, 1994, the plaintiff filed an objection to the motion to intervene accompanied by a supporting memorandum of law. The AG filed a reply memorandum in support of the motion on November 24, 1993. Reference is also made to the fact that the defendant filed a memorandum in support of the motion to intervene on October 21, 1993.
As a preliminary matter, the plaintiff has requested that this court deny the motion to intervene because the constitutionality of the Public Act has been put in issue in a declaratory judgment action brought by plaintiff against the State in the Judicial District of Hartford. This request has been rendered moot as that case has subsequently been withdrawn.
The first argument raised by the plaintiff in its CT Page 3046 memorandum of law is that the case at bar is legally the same, i.e. equivalent, as a quiet title action despite the fact that the plaintiff's claims derive from reliance on the State's Indian laws. The plaintiff claims that Connecticut General Statute 47-31 allows as parties to a quiet title action only those claiming title to or an interest in the property in question. The plaintiff contends that the State of Connecticut has no recognized legal interest in the land and therefore is not a proper party. The State's memorandum of law denies that the plaintiff's lawsuit is equivalent to a quiet title action. The court finds the State of Connecticut's argument the more compelling.
The claim made by the plaintiff in this case is unique. Reviewing the old common law forms of action for a label to attach to the plaintiff's claims in this action is most probably an exercise in futility. As was stated by the court in a 1977 Indian claim case, "no purpose would be served trying to tack a name on the cause of action asserted." Oneida Indian Nation of New York v. Oneida, 434 F. Sup. 527, 547 (1977). In fact, to this court, the plaintiff's assertions are more closely identified with an action for ejectment rather than an action for the quiet of title. "[A quiet title action] is not a proper remedy for the alleged owner of the legal title to land to obtain an adjudication of his title against one by whom he has been ousted of possession." (Citation omitted.) Cahill v. Cahill 76 Conn. 542, 546, 57 A. 284 (1904). "One reason for the rule is, that if the defendant is in possession the plaintiff has adequate remedy by the ordinary action at law of ejectment and trespass." Id., 547. Section 4053 [now 47-31] authorizes this special statutory remedy when legal injury results to the owner in possession of the land from unlawful claims of an adverse estate or interest in that land; the statutory relief authorized is equitable and consists in a judgment quieting title and settling the title to the land in dispute. . . ." (Citation omitted.) Spencer v. Merwin, 80 Conn. 330,334, 68 A. 370 (1907). In actions to quiet title, the court is not authorized "to try the common-law action of ejectment, and to render judgment, appropriate to that action, for possession and money damages." Foote v. Brown 78 Conn. 369,379, 62 A. 667 (1905). An action of ejectment is a legal remedy "in which the right of possession to [property] may be tried and the possession obtained." 25 Am.Jur.2d Ejectment 1 (1966). An action of ejectment is frequently used as a "means of trying title, since in order to succeed, the plaintiff must have CT Page 3047 possessory title — the right of entry upon the land." Id. Further, modern practice allows for a plaintiff to recover mesne profits and damages in ejectment action. Id., 148, 150. Such recovery is usually measured by the fair rental value of the property. Id., 151. The plaintiff's claim for relief asks the court, inter alia, to find that plaintiff has a right of possession to the lands in question, to restore plaintiff to such possession, and to award plaintiff the rents and profits from the lands. Reviewing the allegations contained in the plaintiff's complaint and its prayer for relief, the court finds that the plaintiff's cause of action is pleaded more like an ejectment action than one to quiet title.
Even, if this court were to decide that the case at bar is a quiet title action, this court concludes that the State's interest in the present litigation is substantive enough so as to allow intervention. General Statute 47-31 provides in pertinent part that "[a]n action may be brought by any person claiming title to, or any interest in, real or personal property . . . against any person who may claim to own the property, or any part of it, . . . or to have any interest in the property. . . ." While the State may not claim title, it still has a substantive interest in the land at issue. The State has a substantial interest in the marketability and stability of land titles within its borders. Our Connecticut courts have recognized that "a state has strong interests in assuring the marketability of property within its borders." Hoge v. Hoge,178 Conn. 308, 322, 422 A.2d 280 (1979), Shaffer v. Heitner,433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The legislature has made its statement, whether the act is constitutional or not, that the State of Connecticut has a substantial interest in maintaining stable and marketable land titles within its borders. The plaintiff's claims integrally affect the marketability of land titles in our state and therefore the State has a a significant interest in the land that is at issue here. The plaintiff's decision who to include as parties to this litigation does not preclude this court from bringing in other parties when it deems that such would be in the interest of justice. See Practice Book 99 and 100. "In quiet title actions, as in other actions, any person may be permitted to intervene where he has or claims an interest in the controversy. . . ." 65 Am.Jur.2d Quieting Title P71 (1966).
The plaintiff next claims that a trust and fiduciary relationship has developed over three centuries of contact CT Page 3048 between plaintiff and the State. The plaintiff asserts that colonial and state laws regarding Indian lands, members and funds have elevated the state to a position of "overseer" or "guardian" of plaintiff. Any attempt by the State to intervene as a defendant against the interests of the plaintiff would be a violation of this trust relationship and must be denied. For its part, the State denys [denies] the existence of an irreconcilable conflict of interest and notes that any responsibilities of the State to the plaintiff have been imposed by the legislature. Inviting the court to review those legislative mandates, the State points out that they do not cover the issues raised in this litigation.
"Absent some showing of . . . control or supervision over tribal monies or properties, . . . or the existence of a fiduciary duty based on an authorizing document such as a statute or a regulation, . . . there can be no trust relationship between [plaintiff and the State]." (Citations omitted. ) U.S. v. Wilson, 881 F.2d 596, 600 (9th Cir. 1989). What about a fiduciary duty created by Connecticut General Statute 47-61
which provides:
 In any action brought by an Indian or Indians for the recovery of lands owned by Indians, or sequestered for their use by the general assembly or by any town agreeably to law, the defendant shall not plead the statute of limitations, except as against an Indian or Indians authorized by law to convey Indian lands, or as against a town authorized by law to convey Indian lands.
Even if General Statute 47-61 is evidence of the existence of a fiduciary duty, this court holds that intervention by the State as a party defendant will not result in an impermissible conflict of interest. A fiduciary duty does not mean that the plaintiff and the State have to be on the same side of an issue all the time. Tribal interests may not always correspond with state interest. Even the federal government does not have a duty of undivided loyalty.
 It may be that where only a relationship between the Government CT Page 3049 and the tribe is involved, the law respecting obligations between a trustee and a beneficiary in private litigation will in many, if not all, respects adequately describe the duty of the United States. But where Congress has imposed upon the United States, in addition to its duty to represent Indian tribes, [another] duty . . ., the analogy of a faithless private fiduciary cannot be controlling for purposes of evaluating the authority of the United States to represent different interests.
Nevada v. United States, 463 U.S. 100, 142, 103 S.Ct. 2906, 292477 L.Ed.2d 509 (1983).
In a recent case decided by the U.S. District Court of Minnesota wherein the defendants requested the court to require the United States to intervene on their behalf or to represent the interest of both sides of the litigation, rather than grant the United States' motion to intervene as a plaintiff on the side of a group of Chippewa Indians. Mille Lacs Bank of Chippewa Indians v. Minnesota, ___ F. Sup. ___ (D.Minn. 1993). the court stated that:
 [a]lthough the United States may have interests to protect in this case in addition to its trustee interest in indian tribes, it may choose to enforce its trustee interest instead of other interests. If Congress has given the executive branch conflicting obligations, the government may have to choose which is more important.
(Internal citation omitted.) Id. The same can be said for the State of Connecticut. The AG will from time to time be put in a position where his duties are conflicting. General Statute3-125 describes the duties of AG. One such duty is that he "shall have general supervision over all legal matter in which the state is an interested party. . . ." Id. "He shall appear for CT Page 3050 the state in such instances." Id. "[AG] must, to the best of his ability, fulfill his `public duty, as Attorney General, and is duty as a lawyer to protect the interest of his client, the people of the state.' This special status of the Attorney General — where the people of the state are his clients — cannot be disregarded in considering the application of the provisions of the code of professional responsibility to the conduct of his office." (Citation omitted.) Connecticut Commission on Special Revenue v. Connecticut Freedom of Information Commission,174 Conn. 308, 319, 387 A.2d 533 (1978). Even if the State has a trust relationship with plaintiff, such a relationship does not require always lining up on the side of the plaintiff. The State has a trust relationship with its citizenry also. When the State finds itself in a position where its duties are in conflict it may be forced to choose which interest is more important. See Mill Lacs Bank of Chippewa Indians, supra. The state has chosen which of its interests is more important given the facts of this litigation. The State had the right to do so.
The plaintiff also asserts that the Public Act violates various provisions of both the State and Federal Constitutions. "[A] court will not pass upon a constitutional question if there is present some other ground upon which the case may be decided." Hartford v. Powers, 183 Conn. 76, 84-85, 438 A.2d 824
(1981), citing Ashwander v. Tennessee Valley Authority, 297 U.S. 288,347, 56 S.Ct. 466, 80 L.Ed. 688 Brandeis, J., concurring), reh'g denied, 297 U.S. 728, 56, S. Ct 588,80 L.Ed. 101 (1936). Because this court will decide this case on other grounds, namely permissive intervention, the constitutionality of the act will not be reached.
"`The consideration of permissive intervention involves numerous factors including the timeliness of the intervention, the proposed interventor's interest in the controversy, the adequacy of their representation of such interest by existing parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. . . .'" Milford v. Local 1566,200 Conn. 981, 94, 510 A.2d 177 (1986), quoting Horton v. Meskill,187 Conn. 187, 197, 445 A.2d 579 (1982).
In applying the factors to be considered for permissive intervention to the present case, the State's motion to intervene should be granted. The requested intervention is CT Page 3051 timely; the action was returned to court on September 14, 1993. In addition, as discussed above, the State has a significant interest in the controversy, i.e., the stability and marketability of land titles. The State alleges that the present case seriously threatens such interest. The State's presence will ensure that such interest is fully represented so as to allow the court to make a complete resolution of the controversy and at the same time will not cause undue delay or prejudice.
This court, in reaching its conclusion also considered the recent decisions by Judge Hugh Curran in the cases of Golden Hill Paugussett Tribe of Indians v. City of Shelton, CV93044148S Judicial District of Ansonia/Milford at Milford and Golden Hill Paugussett Tribe of Indians v. City of Seymour, CV93044366S, Judicial District of Ansonia/Milford at Milford.
The state of Connecticut's motion to intervene is granted.
LAWRENCE L. HAUSER, JUDGE