# Supreme Court of Texas

No. 24-0162

Ken Paxton, in his Official Capacity as Attorney General of
Texas, and Greg Abbott, in his Official Capacity as Governor of
Texas,

*Petitioners*,

v.

American Oversight,

*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued February 19, 2025**

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE YOUNG filed a concurring opinion.

Justice Sullivan did not participate in the decision.

This case raises the age-old question of the judiciary's authority
to issue a writ of mandamus against an executive officer. *See, e.g.*,
*Marbury v. Madison*, 5 U.S. 137 (1803). A private, nonprofit group
called American Oversight filed a petition for writ of mandamus in

district court against the Governor and the Attorney General, alleging violations of the Public Information Act. As we observed thirty years ago, however, the relevant statutes and constitutional provisions do not empower district courts to issue writs of mandamus against constitutional executive officers like the Governor and the Attorney General. *See A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 672–73 (Tex. 1995). The Legislature could have provided otherwise in the three decades since *Sharp*, but we conclude that it has not done so. As a result, without addressing any other issues, we reverse the judgment of the court of appeals and direct the district court to dismiss the mandamus petition for lack of jurisdiction.

This result, which arises from the peculiarities of mandamus jurisdiction, does not mean that constitutional executive officers cannot be sued if they violate the Public Information Act. In addition to the PIA's criminal penalties, section 552.3215 authorizes suits for declaratory or injunctive relief "against a governmental body that violates this chapter." TEX. GOV'T CODE § 552.3215(b). American Oversight could have proceeded under that provision, which requires the participation of the Travis County district attorney, but it did not. In addition to that available remedy, the Legislature could have attempted to authorize district courts to issue mandamus relief against constitutional executive officers under the PIA, but we conclude that it has not. It has, instead, limited mandamus jurisdiction over constitutional executive officers to this Court. *See* TEX. GOV'T CODE § 22.002(c). We are bound to follow that statutory directive, just as all

2

governmental bodies in Texas, including those headed by constitutional executive officers, are bound to follow the Public Information Act.

## I.

In 2022, American Oversight sent three Public Information Act requests to the Governor's office. The first sought official communications involving any non-governmental email address attributed to the Governor. The second sought all text messages sent or received by the Governor regarding official business. The third sought emails between the Governor's office and the National Rifle Association, the Texas State Rifle Association, and similar groups.

The Governor's office identified documents responsive to the first request, but it considered them exempt from disclosure for various reasons, including attorney-client privilege. It requested a ruling from the Attorney General's office, as contemplated by the PIA. *See generally* TEX. GOV'T CODE § 552.301. The AG's office determined that all the responsive documents were privileged or related to pending litigation. For the second request, the Governor's office again sought to withhold the responsive information and submitted a request for a ruling to the AG's office. The AG's office agreed that some of the responsive information must be or could be withheld, but it also ruled that some of the information must be turned over. The Governor's office provided American Oversight with roughly 100 pages of text messages in response to the second request. For the third request, the Governor's office determined that it had no responsive information.

American Oversight also sent four Public Information Act requests to the Attorney General's office. The first sought all emails

sent by the Attorney General or his solicitor general between January 6 and January 8, 2021. The second sought official communications involving any non-governmental email address used by the Attorney General. The third sought all text messages sent or received by the Attorney General regarding official business. The fourth sought emails between the AG's office and the National Rifle Association, the Texas State Rifle Association, and other similar groups.

For the first and third requests, the AG's office produced some responsive documents but sought to withhold others. It requested an AG's office ruling,[1] and the ruling confirmed its authority to withhold the remaining information. For the second request, the AG's office sought to withhold all responsive information, and the resulting ruling confirmed that approach. For the fourth request, the AG's office identified no responsive information.

American Oversight was unsatisfied with both offices' responses. It filed a petition for writ of mandamus in Travis County district court against the Governor and the Attorney General. It brought the mandamus petition under section 552.321 of the PIA, which provides

---

[1] When the AG's office requests a ruling under the PIA, an oddity arises in that it must submit the request to another section of its own office. In such circumstances, we understand that the section of the AG's office requesting the ruling and the section of the AG's office making the ruling are sealed off from one another and, at least in principle, operate independently. *See generally Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121 (Tex. 1988). We are not asked to consider whether two sections of the same office, both of which answer to and exercise authority derived from the same constitutionally elected officer, can ever truly operate independently of one another. The PIA affords no alternative way of handling information requests submitted to the AG's office, which means the office is often obligated to "wear two hats" in this way and to navigate the consequent ethical challenges as best it can.

that "[a] requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body . . . refuses to supply public information." *Id.* § 552.321(a). Section 552.321 further provides that the suits authorized by subsection (a) "must be filed in a district court for the county in which the main offices of the governmental body are located." *Id.* § 552.321(b).

The Governor and the Attorney General (collectively, "the State") challenged the district court's jurisdiction. They argued that sovereign immunity bars the mandamus petition because American Oversight did not plead a viable claim of the State's refusal to provide public information. They contended they had properly followed the PIA's procedures for withholding the documents not produced, and they provided affidavits indicating they had conducted a "diligent and good faith search" for responsive information. The district court denied the State's pleas to the jurisdiction, and the State filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

On appeal, the State re-urged its initial position but also pointed out an additional potential defect in the district court's jurisdiction. *See Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 20 (Tex. 2024) (questions of subject-matter jurisdiction "cannot be waived" and "can be raised for the first time on appeal"). The State contended that the Legislature has empowered only the Supreme Court to issue writs of mandamus against constitutional executive officers, *see* TEX. GOV'T CODE § 22.002(c), and that the PIA does not authorize district courts to do so. American Oversight disagreed, arguing that section 552.321 grants district courts

5

mandamus jurisdiction over any "governmental body," including governmental bodies headed by constitutional executive officers.

The court of appeals affirmed. 683 S.W.3d 873, 884 (Tex. App.—Austin 2024). It held that despite the general statutory reservation of mandamus authority over constitutional executive officers to the Supreme Court, section 552.321(b) authorizes district courts to issue mandamus relief when any governmental body, including one headed by a constitutional executive officer, "refuses to supply public information." *Id.* The court of appeals further held that American Oversight had alleged a viable claim that the State "refuse[d] to supply public information." *Id.* at 885; *see* TEX. GOV'T CODE § 552.321(a). The State petitioned for review, and we granted the petition.

## II.

### A.

The Legislature has authorized PIA requestors like American Oversight to "file suit for a *writ of mandamus* compelling a governmental body to make information available." TEX. GOV'T CODE § 552.321(a) (emphasis added). Section 552.321 could certainly have authorized a procedural vehicle other than a mandamus petition, with all of its attendant substantive and procedural quirks. For instance, the very next section authorizes suits by district and county attorneys for declaratory and injunctive relief, either on their own or at the urging of a dissatisfied requestor. *Id.* § 552.3215(c), (e). But rather than give requestors a unilateral right to sue for declaratory relief, injunctive relief, or some other conventional remedy available in run-of-the-mill civil litigation, the Legislature chose to authorize requestors to pursue

6

petitions for writ of mandamus. And a common-law term like "writ of mandamus," when transplanted into the statutory law, "brings the old soil with it." *Hall v. Hall*, 584 U.S. 59, 73 (2018) (internal quotation omitted). The outcome of this appeal turns on the Legislature's choice to provide *mandamus* relief as the sole remedy available to requestors under section 552.321(a). That choice, which we must assume was deliberate, naturally incorporates Texas law's pre-existing limitations on mandamus relief, including limitations on jurisdiction.

The history of the writ of mandamus in Texas dates (at least) to the 1836 Constitution of the Republic of Texas, which charged the new Congress with adopting the English common law, from which the writ derives. REPUB. TEX. CONST. of 1836, art. IV, § 13, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 1074 (Austin, Gammel Book Co. 1898); Act approved Jan. 20, 1840, 4th Cong., R.S., § 1, 1840 Repub. Tex. Laws 3, 4, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 177, 178 (Austin, Gammel Book Co. 1898) (adopting the common law of England).[2] The writ itself long pre-existed the Republic, of course. *See* THOMAS TAPPING, THE LAW AND PRACTICE OF THE HIGH PREROGATIVE WRIT OF MANDAMUS 56 (London, Wm. Benning & Co. 1848) (tracing the origins of the writ of mandamus perhaps to the fourteenth-century reign of King Edward III, but at the latest to *Bagg's Case* from the King's Bench in 1615).

---

[2] *See also Bradley v. McCrabb*, Dallam 504, 506, 508 (Tex. 1843) (holding that the inadequate-legal-remedy requirement for writs of mandamus was part of the English common law adopted into the law of the Republic); *Yett v. Cook*, 268 S.W. 715, 718–19 (Tex. 1925) (observing that the writ of mandamus is "construed in light of the common law").

This Court often issues the writ of mandamus—or does so provisionally—to compel a lower court to perform a duty that is "simply ministerial and involves no judicial discretion." *Lloyd v. Brinck*, 35 Tex. 1, 10 (1871). But the writ's historical uses extend beyond supervision of lower courts and include the possibility that writs of mandamus may be issued against officials in other branches of government, in appropriate cases where the issuing court is lawfully authorized to do so. The writ is an order from a court "whereby a person or officer is required to do something which he wrongfully declines to do," and "in exceptional cases it may properly be given a restraining effect" to "revers[e] or amend[] . . . a previous act." *Seagraves v. Green*, 288 S.W. 417, 425 (Tex. [Comm'n Op.] 1926); *cf. Lewright v. Bell*, 63 S.W. 623, 623 (Tex. 1901) ("The courts cannot, by the writ in question, compel an officer to perform an official duty, where that duty involves . . . discretion on his part.").

In mandamus actions against non-judicial officials, we have stated that "[m]andamus may issue to compel public officials to perform ministerial acts, as well as 'to correct a clear abuse of discretion by a public official.'" *In re Williams*, 470 S.W.3d 819, 821 (Tex. 2015) (quoting *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991)). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Id.* (quoting same).

With these general observations about the nature of the writ of mandamus in mind, we turn to the question of the power of the district court in this case, under our Constitution and statutes, to issue the writ requested by American Oversight.

8

**B.**

The question is whether section 552.321 of the Government Code authorizes the district court to issue a writ of mandamus against two constitutional executive officers, the Governor and the Attorney General. To answer that question, we must first understand the constitutional and statutory landscape in which section 552.321 operates.

District court jurisdiction is generally defined by Article V, section 8 of the Constitution:

> District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction.

TEX. CONST. art. V, § 8. This provision does not mention writs of mandamus, but the Constitution is not unconcerned with the subject. With respect to the Supreme Court, Article V twice mentions the writ of mandamus. Section 3(a) provides that the "Supreme Court and the Justices thereof . . . may issue . . . writs of mandamus . . . as may be necessary to enforce its jurisdiction," subject to "such regulations as may be prescribed by law." *Id.* § 3(a). That same section further provides: "The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." *Id.*[3] The latter

---

[3] Article V elsewhere mentions the writ of mandamus in section 5(c), which authorizes the "Court of Criminal Appeals and the Judges thereof,"

9

provision reflects our Constitution's acknowledgement of the obvious separation-of-powers concerns implicated by judicial authority to issue writs of mandamus against high-ranking executive officials. *See* TEX. CONST. art. II, § 1.[4] The Legislature has acknowledged those concerns as well, as reflected in the limitations it has placed on the judiciary's authority to issue writs of mandamus against constitutional executive officers. *See* TEX. GOV'T CODE § 22.002(c). We turn now to those limitations.

A district court's constitutional grant of jurisdiction consists of "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies," which the parties agree includes mandamus actions. TEX. CONST. art. V, § 8.[5] An important caveat

---

"[s]ubject to such regulations as may be prescribed by law," to issue the writ of mandamus "in criminal law matters." TEX. CONST. art. V, § 5(c).

[4] "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy . . . and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others . . . ."

[5] Until 1985, the Constitution specifically mentioned the writ of mandamus as within a district court's authority. *See* TEX. CONST. art. V, § 8 (amended 1985) (providing that "[d]istrict [c]ourt[s] . . . have power to issue writs of . . . mandamus"). It no longer does so, instead providing only that "District Court judges shall have the power to issue writs necessary to enforce their jurisdiction." TEX. CONST. art. V, § 8. Section 24.011 of the Government Code authorizes a district judge to "grant writs of mandamus, injunction, sequestration, attachment, garnishment, certiorari, and supersedeas and all other writs necessary to the enforcement of the court's jurisdiction." TEX. GOV'T CODE § 24.011. The parties do not question the general authority of district courts to issue writs of mandamus. They focus, as do we, only on whether that authority extends to constitutional executive officers in PIA cases.

follows, however. The apparently broad grant of jurisdiction does not extend to "cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution *or other law* on some other court, tribunal, or administrative body." *Id.* (emphasis added). The Legislature is thus authorized to withdraw jurisdiction from district courts and confer it upon other courts. One way in which the Legislature has done so is section 22.002 of the Government Code:

> (a) The supreme court or a justice of the supreme court may issue . . . all writs of quo warranto and mandamus agreeable to the principles of law regulating those writs, against a statutory county court judge, a statutory probate court judge, a district judge, a court of appeals or a justice of a court of appeals, or any officer of state government except the governor, the court of criminal appeals, or a judge of the court of criminal appeals.
>
> . . . .
>
> (c) **Only the supreme court has the authority to issue a writ of mandamus** or injunction, or any other mandatory or compulsory writ or process, **against any of the officers of the executive departments of the government of this state** to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform.

TEX. GOV'T CODE § 22.002 (emphases added).

Setting aside the constitutional question of whether *any* court can issue a writ of mandamus against the Governor, *see post* at 25–37 (Young, J., concurring), section 22.002(c) states that *only* this Court has authority to do so "against any of the officers of the executive departments of the government of this state," TEX. GOV'T CODE § 22.002(c). In other words, no court, except for the Supreme Court, has

11

that authority. As we have held before, the phrase "officers of the executive departments of the government of this state" includes the officers of the Executive Department enumerated in the Constitution:

> The Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General.

TEX. CONST. art. IV, § 1; *see Sharp*, 904 S.W.2d at 672 ("[T]he [C]onstitution identifies seven officials as executive officers" and section 22.002(c) "confer[s] exclusive original jurisdiction on this Court over mandamus proceedings against executive officers, except for the [G]overnor.").[6]

## C.

To summarize, district courts generally have broad original jurisdiction unless another law provides otherwise. Section 22.002(c) is another law providing otherwise. It says no court but the Supreme Court may issue a writ of mandamus against constitutional executive officers, which includes the two parties at issue here, the Governor and the Attorney General. District courts therefore lack jurisdiction to issue a writ of mandamus against the Governor or the Attorney General, unless some other statute overrides section 22.002(c) and empowers them to do so.

---

[6] *Sharp*'s count of seven constitutional executive officers included the Treasurer, a position eliminated by a 1995 constitutional amendment. *See* Tex. S.J. Res. 1, 74th Leg., R.S., 1995 Tex. Gen. Laws 4980 (adopted at the general election on Nov. 7, 1995, by a vote of 495,181 to 218,473).

American Oversight contends that section 552.321 is just such a statute. It states:

> (a) A requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision as provided by Subchapter G or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C.
>
> (b) A suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located . . . .

TEX. GOV'T CODE § 552.321. This is not the first time we have considered the interplay between the PIA's mandamus remedy and section 22.002's restrictions on mandamus jurisdiction against executive officers. In 1995, the statute authorizing PIA mandamus actions was, in relevant respects, identical to today's subsection (a), quoted above. Subsection (b) did not yet exist. The question arose of a district court's authority to issue a writ of mandamus under the PIA against the Comptroller. Relying on section 22.002(c)'s clear reservation to the Supreme Court of exclusive mandamus jurisdiction over constitutional executive officers, we held:

> [D]istrict courts generally have no jurisdiction over executive officer respondents. Any exception to this rule would require express statutory authorization by the legislature naming district courts as the proper fora. *See id.* § 552.353(b)(3). Under the current statutory scheme, when a relator seeks to compel an executive officer to perform duties imposed by law, generally this Court alone is the proper forum.

13

*Sharp*, 904 S.W.2d at 672. Further, although the statute authorized mandamus relief against a "governmental body," we held that the constitutional executive officer himself, in that case the Comptroller, was "the proper party," because he had "the legal obligation to perform the duties under [the PIA]." *Id.* at 673. Because the constitutional executive officer himself is the proper respondent in a mandamus action to enforce the PIA against a constitutional office, the law's restrictions on mandamus relief against such officers were implicated. *See id.* The Legislature had not avoided this quandary by authorizing mandamus relief against the "governmental body," as opposed to its officer. *See id.* at 681.[7]

In 1999, the Legislature added subsection (b) to section 552.321, which now states that "[a] suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located." TEX. GOV'T CODE § 552.321(b). Determining this provision's meaning determines the outcome of this appeal.

American Oversight argues that subsection (b) is the Legislature's effort, in response to *Sharp*, to empower district courts to

---

[7] The extent to which any legally relevant distinction may be drawn between a constitutional executive officer and the governmental body he heads is a complicated and interesting question. The parties join issue on it to some extent, but we need not endeavor to answer it here. It is enough, for present purposes, to follow *Sharp*'s holdings that (1) the proper respondent in a mandamus action under the PIA involving a constitutional executive office is the constitutional executive officer; and (2) the PIA's mandamus remedy against a "governmental body" necessarily implicates section 22.002(c)'s limitations on the judiciary's authority to issue mandamus relief against constitutional executive officers.

14

issue writs of mandamus against constitutional executive officers. It contends that, in addition to being later in time, subsection (b) is more specific than section 22.002(c) in that it specifically governs PIA mandamus actions, whereas section 22.002(c) governs mandamus actions generally.

The State responds that section 552.321(b) merely specifies where a mandamus action under the PIA must be filed, rather than expanding the authority of a district court over an executive officer respondent who is not otherwise within the court's jurisdiction. In the State's view, subsection (b) does not mention constitutional executive officers or jurisdiction, and it should be understood as a general venue provision for PIA mandamus actions, which remains subject to section 22.002(c)'s specific limitation on a district court's mandamus authority over constitutional executive officers.

We conclude that section 552.321(b) did not expand the jurisdiction of district courts over constitutional executive officers. The Supreme Court's exclusive jurisdiction under section 22.002(c) of the Government Code to issue writs of mandamus against constitutional executive officers has been a settled feature of Texas law for at least a century, and section 552.321(b) contains none of the indicia required to overcome it.

To begin with, section 552.321(b) does not mention jurisdiction, authority, power, or anything of the sort. The key holding of *Sharp*, which American Oversight contends has been abrogated by subsection (b), is that district courts lack the jurisdiction—that is, the power—to issue writs of mandamus against constitutional executive

15

officers under the PIA. But nothing in section 552.321(b) speaks to the question of the district court's *power*. The provision reads:

> (b) A suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located . . . .

*Id.* By its own terms, subsection (b) merely establishes a mandatory venue for the suits authorized by subsection (a). That venue is the local district court, which in the overwhelming majority of PIA disputes across all levels of state and local government throughout Texas will have the power to entertain such a suit. In the small fraction of PIA disputes involving constitutional executive officers, however, *Sharp* instructs that district courts lack jurisdiction. American Oversight asks us to read into subsection (b)'s venue requirement an unspoken legislative intent to abrogate *Sharp* and to expand the *power* of district courts to include *all* PIA mandamus actions, including those against constitutional executive officers that would otherwise run afoul of section 22.002(c) of the Government Code. The problem is that subsection (b) does not say that. It reads as a garden-variety venue provision, which resembles many other venue provisions,[8] none of which

_____

[8] *See, e.g.*, TEX. GOV'T CODE § 2007.044(b) ("A suit under this section must be filed in a district court in the county in which the private real property owner's affected property is located."); TEX. GOV'T CODE § 551.142(d) ("A suit filed by the attorney general under Subsection (c) must be filed in a district court of Travis County."); TEX. TRANSP. CODE § 342.302(c) ("A suit under this section must be filed in a justice court of the county [from which a license is required under this chapter]."); TEX. TRANSP. CODE § 342.304(b) ("A suit under this section must be filed in a justice court of the county in which the license is issued."); TEX. GOV'T CODE § 2007.021(a) ("A suit under this subchapter must be filed in a district court in the county in which the private real property owner's affected property is located.").

16

are thought to alter the jurisdiction of any court. *See Tex. Mut. Ins. Co. v. Chicas*, 593 S.W.3d 284, 289 (Tex. 2019) (statute providing for venue transfers "clearly did not [implicate] subject-matter jurisdiction" (citing *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 n.1 (Tex. 2007))).

A key pillar of American Oversight's position is the notion that subsection (b) was the Legislature's answer to *Sharp*. Whether or not that is true as a matter of legislative history, the operative force of subsection (b) derives from its text, not from the purpose it was thought to serve at the time it was enacted. Yet even if we assume subsection (b) was indeed the Legislature's "answer" to *Sharp*, that gets us nowhere, because the question remains: What was the answer? American Oversight suggests that the answer must have been to empower district courts with mandamus authority over constitutional executive officers. But we must discern the Legislature's answer from the text it chose, and nothing in the text of subsection (b) accomplishes such a result.

Subsection (b) simply does not pick up the glove thrown down by *Sharp*, which holds that "an action against" the "executive officer respondents" "would require *express* statutory authorization by the legislature naming district courts as the proper fora." 904 S.W.2d at 672 (emphasis added). The proper fora for what? For actions against executive officer respondents. Section 552.321(b) does not mention constitutional executive officers at all. It therefore does nothing to *expressly* authorize district courts as the proper fora for mandamus suits against those officers.

Immediately following *Sharp*'s indication that only "express statutory authorization" would do the trick, the Court cited an example,

from within the PIA, of the kind of express language it had in mind. *See id.* The example the Court provided, section 552.353(b)(3), at the time referred to:

> [A] petition for a declaratory judgment, a writ of mandamus, or both, *against the attorney general in a Travis County district court* seeking relief from compliance with the decision of the attorney general . . . .

Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 607 (amended 2009) (current version at TEX. GOV'T CODE § 552.353(b)(3)) (emphasis added). Thus, had the Legislature wanted to respond to *Sharp* by further empowering district courts, the Court provided line-by-line instructions. It did so by pointing to a provision specifically contemplating a mandamus petition against the attorney general in a district court. But subsection (b)'s venue requirement looks nothing like the statute the Court pointed to as a rubric for accomplishing the result American Oversight seeks. It looks, instead, like many other venue provisions throughout the statute books, to which courts do not typically assign jurisdictional significance. *See supra* note 8.

Two basic rules arose from *Sharp*: (1) district courts lack the power to issue PIA mandamus relief against constitutional executive officers; and (2) the Supreme Court generally has the power to issue PIA mandamus relief against constitutional executive officers (setting aside the Governor). 904 S.W.2d at 672–73. To these two rules, the Legislature added another: (3) all PIA mandamus actions must be brought in district court. TEX. GOV'T CODE § 552.321(b). American Oversight would like the Legislature's answer to *Sharp* to have been that the third rule overrides the first rule. But subsection (b) does not say that. Indeed, by restricting venue in PIA mandamus actions to

18

district court without mentioning constitutional executive officers or the jurisdiction of any court, the Legislature may very well have been responding to *Sharp* by preventing parties from filing mandamus actions against constitutional executive officers in the Supreme Court. In other words, the Legislature may have intended the third rule mentioned above to override the *second* rule, not the first.

We need not decide today whether an original mandamus action in this Court under the PIA against a constitutional executive officer could proceed in the face of subsection (b)'s mandatory venue requirement. It is enough, for present purposes, to hold that the text of subsection (b) of section 552.321 contains no indication that its aim was to expand the authority of district courts over constitutional executive officers. The text of subsection (b) fixes venue in the local district court for the mandamus actions authorized by subsection (a). It does so without changing the nature of the actions authorized by subsection (a) or the power of various courts over those actions. Because that is all the text says, that is all the text does.

## D.

For American Oversight to prevail, it would have to be the case that a statute authorizing lower courts to issue writs of mandamus against a general category of respondent that includes constitutional executive officers is enough to override section 22.002(c)'s grant to this Court of exclusive mandamus jurisdiction against constitutional executive officers. Yet if this were true, section 22.002(c) would always give way to general statutory grants of mandamus authority to lower courts. We have never taken such a limited view of section 22.002(c).

19

To the contrary, as we held in *Sharp*, overcoming section 22.002(c)'s prohibition on lower-court mandamus authority over constitutional executive officers will typically require "express statutory authorization" of the sort we pointed to in that case. *See Sharp*, 904 S.W.2d at 672 (pointing to a provision specifically contemplating mandamus relief in district court against the attorney general).

American Oversight argues that if subsection (b) is not a jurisdictional grant, then it must be superfluous. *See Hunter v. Fort Worth Cap. Corp.*, 620 S.W.2d 547, 551 (Tex. 1981) ("[T]he Legislature is never presumed to do a useless act."). That is not the case. As already observed, subsection (b) could be read to foreclose the direct mandamus actions in this Court against constitutional executive officers contemplated by *Sharp*. Whether or not it goes that far, there is no question that subsection (b) provides clarity on an important and muddled question the statute previously left unaddressed—where petitioners should file the PIA mandamus actions authorized by subsection (a). Unlike most lawsuits, mandamus petitions may originate at all three levels of our court system. A mandamus petition initiates an original action in the court in which it is filed, and as a colloquial matter mandamus petitions are often more associated with appellate courts rather than with district courts. It would therefore come as no surprise—and would certainly not be superfluous or redundant—for the Legislature to specify that *these* mandamus petitions, authorized by section 552.321(a), must originate in district court, rather than leaving it to litigants and courts to divine such a rule from the pre-existing legal landscape.

The Legislature's provision of clarity and specificity is generally a welcome feature of a user-friendly statutory scheme. Legislative clarity and specificity should not lightly be confused for superfluity or redundancy. When the Legislature spells out the rules governing a cause of action, such as by providing a venue rule, the canon against superfluity does not require us to ask whether, in the absence of the legislative venue rule, the pre-existing law would have required the same rule—and then to assign an alternative meaning to the statutory venue rule, beyond the natural meaning of its text, in a quest to avoid superfluity. Like any canon of construction, the presumption against "useless acts" is merely one tool, among many, to be used in service of the overriding goal, which is to understand the meaning of the statutory text, within its context, as would an ordinary reader of English. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) ("We . . . apply the common, ordinary meaning" of a "statute's text," "constru[ing] the words in light of their statutory context . . . ."). Stretching the text beyond its natural meaning to avoid perceived superfluity or redundancy is just as misguided as stretching the text beyond its natural meaning for any other reason.

Finally, American Oversight suggests that if the State's arguments prevail, then constitutional executive officers and their state agencies will be able to violate the PIA with impunity. That is not so. The PIA contains abundant criminal penalties. To take one capacious example, "[a]n officer for public information, or the officer's agent, commits an offense if, with criminal negligence, the officer or the officer's agent fails or refuses to give access to, or to permit or provide copying

21

of, public information to a requestor as provided by this chapter." TEX. GOV'T CODE § 552.353(a). There are also civil remedies beyond the mandamus action at issue here. Section 552.3215 authorizes parties like American Oversight to "file a complaint alleging a violation of this chapter." *Id.* § 552.3215(e). If the governmental body is a state agency, the complaint may be filed with the Travis County district attorney, who then has thirty days to decide whether a violation of the PIA was committed and to decide whether to initiate an action for declaratory or injunctive relief. *Id.* § 552.3215(e), (g)(1). The district attorney must inform the complainant in writing of these determinations. *Id.* § 552.3215(g)(2).

American Oversight objects that this pathway makes civil litigation of its allegations contingent on the agreement of the Travis County district attorney to take up the mantle. It does. But that requirement hardly diminishes the incentive of state officials, who face the prospect of both criminal and civil liability at the hands of the Travis County district attorney, to comply in good faith with the PIA. American Oversight is correct, of course, that its reading of the statutory scheme would maximize the ability of private litigants to unilaterally enforce the PIA against constitutional executive officers through civil litigation. We are under no obligation, of course, to maximize the scope of the PIA's remedies. Our job is to understand what those remedies are, as the Legislature has written them. "Liberally construed" or otherwise, the words of section 552.321 do not support the remedy American Oversight seeks. *See id.* § 552.001(a). If that result is thought to be undesirable, the Legislature may of course provide otherwise.

## III.

For these reasons, the district court lacks jurisdiction over the petitions for writ of mandamus against the Governor and the Attorney General. Without reaching any other issues, we reverse the judgment of the court of appeals and remand the case to the district court for dismissal.

James D. Blacklock
Chief Justice

**OPINION DELIVERED:** June 27, 2025